# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 9, 1948

Honorable George B. Butler
Chairman
Board of Insurance Commissioners
Austin, Texas

Opinion No V-516

Re: The taxability of reinsur-
ance premiums of a for-
eign corporation when the
gross premium tax has
been paid by the initial
insurer, a Texas corpo-
ration, in which the for-
eign corporation in ques-
tion owns a majority of
the capital stock.

Dear Sir:

You have requested the opinion of this Department upon the
following factual situation:

"Lawyers Title of Texas, Inc., was chartered by
the State of Texas on the 28th day of September, 1937,
under the provisions of Section 49, Article 1302, of
the Revised Civil Statutes of the State of Texas. The
purpose clause is as follows: 'To accumulate and
lend money; purchase, sell and deal in notes, bonds
and securities, but without banking and discounting
privileges; to act as Trustee under any lawful ex-
press trust committed to them by contract and as
Agent for the performance of any lawful act.' Law-
yers Title of Texas, Inc., has been acting as General
Agent in Texas for Lawyers Title Insurance Corpora-
tion, a Virginia corporation, having a certificate of
authority to do a title insurance business in Texas.

"The stockholders and directors of Lawyers Ti-
tle of Texas, Inc., contemplate the organization of a
title insurance company to be formed under the pro-
visions of Article 1302(a) of Vernon's Annotated Civil
Statutes, with a capital stock of at least $100,000.00
and in compliance with all other provisions of the law.

"The corporation will be organized with Texas
citizens as original incorporators and subscribers

to the capital stock; however, it is contemplated that ultimately Lawyers Title Insurance Corporation of Richmond, Virginia, will acquire all of the common stock of the proposed corporation, with the exception of several qualifying shares.

"It is further contemplated that at least for the first two or three years of operations it will be necessary for the proposed corporation to reinsure a substantial part of its business, and it is proposed that all of such reinsurance will be offered to Lawyers Title Insurance Corporation. It is the present belief of the officers and directors of Lawyers Title of Texas, Inc., that as much as 85% of the business of the proposed corporation will be re-insured for the first several years of operations.

"The Lawyer's Title Insurance Corporation of Virginia first secured a certificate of authority from the Board of Insurance Commissioners in 1937 under the provisions of Article 1302a, Vernon's Annotated Civil Statutes, which has been renewed annually thereafter and will in due course file its application for renewal for the year 1948.

"The proposed local corporation will operate as a corporate entity wholly separate and apart from Lawyers Title Insurance Corporation. It will hold its stockholders and directors meetings in Texas, whereas those of Lawyers Title Insurance Corporation will be held in Richmond, Virginia. The records of the two corporations will be kept separately. The management of the two corporations will be entirely separate; however, it is contemplated that there will be some interlocking of officers and directors. There will be no agency relationship between the two corporations, and the proposed local corporation will not be represented to the public or to its customers as being the same corporation as Lawyers Title Insurance Corporation.

"In the light of the facts presented above, I am requesting your opinion and answer to the following questions.

"1. Under the provisions of Article 7064, Revised Civil Statutes, as amended, which provides that where the gross premium tax has been paid by the insuring, no taxes are payable by the reinsuring company

upon contracts of reinsurance, would there be
any tax due by the Lawyers Title Insurance Cor-
poration of Richmond, Virginia, incident to its
reinsurance of policies originally issued by the
proposed corporation?

"2. Would the premiums collected by the
proposed local corporation upon its policies be
treated as received by Lawyers Title Insurance
Corporation for purposes of computing the gross
premiums tax of the latter corporation?"

Article 7064, R. C. S. Texas, 1925, as amended, is in
part as follows:

"Every insurance corporation . . . and any
other organization or concern transacting the
business of . . . title . . . or any other kind or
character of insurance business . . . at the time
of filing its annual statement, shall report to the
Board of Insurance Commissioners the gross a-
mount of premiums received upon property locat-
ed in this State or on risks located in this State
during the preceding year, and each of such in-
surance carriers shall pay an annual tax upon
such gross premium receipts of three and five-
tenths per cent (3.5%) . . . and the gross premi-
um receipts where referred to in this law shall
be the total gross amount of premiums received
on each and every kind of insurance or risk writ-
ten, except premiums received from other licensed
companies for reinsurance, less return premiums
and dividends paid policyholders, but there shall
be no deduction for premiums paid for reinsurance.. .."
(Emphasis added)

Section 5, Article 1302a, V. A. C. S., is as follows:

"Any foreign or domestic corporation issuing
any form of policy or underwriting contracts or
charging any premium rates to the public on either
owners' or mortgagees' certificates or underwriting
contracts on Texas properties other than forms and
rates prescribed by the Board of Insurance Commis-
sioners, hereunder, shall forfeit its right to do busi-
ness in Texas; but this shall not be construed as in-
tended to require the charge made by one title insur-
ance company, qualified to do business under this
Act and doing a general title insurance business for

the public in this State for reinsuring or under-
writing all or any part of the business of another
such company, to be the same as the charge to the
public."

Section 11, Article 1302a, V. A. C. S., is as follows:

"No company operating under the provisions of
this Act shall issue any policy of title insurance in-
volving a contingent liability on said policy of more
than fifty per cent of the capital stock and surplus
of the company, unless the excess shall be simulta-
neously reinsured in some other responsible company
qualified to do business in Texas. Such company may
reinsure any or all of its business provided the rein-
suring company shall be qualified to do business in
Texas and the reinsuring contract shall be first ap-
proved by the said Board."

Section 22, Article 1302a, V. A. C. S., is as follows:

"Any corporation organized and incorporated
under the laws of any other state, territory or coun-
try for the purpose of transacting a title insurance or
title guaranty business shall be required to pay the
same filing fees and occupation tax as any foreign
casualty company is required to pay in order to pro-
cure a permit to do business in Texas. Such foreign
title companies will not be required to pay a franchise
tax."

According to the facts above stated, the proposed Texas
title insurance company which will be organized as a Texas corpo-
ration under the provisions of Art. 1302a, V. A. C. S. may in the
future reinsure part of its anticipated business with Lawyers Ti-
tle Insurance Corporation, a Virginia corporation holding a cer-
tificate of authority to engage in the title insurance business in
Texas under the provisions of Art. 1302a, which certificate of au-
thority was first granted by the Board of Insurance Commissioners
in 1937 and has since been annually renewed. The proposed Texas
title insurance company will, of course, be subject to and liable for
the payment of the gross premium tax under the provisions of Art.
7064, supra. Hence, as to such title insurance business it may re-
insure with Lawyers Title Insurance Corporation, a Virginia cor-
poration, in accordance with the above Sections of Art. 1302a, the
domestic corporation will be allowed no deduction for the premiums
paid the Virginia corporation for reinsurance.

Also under the provisions of Art. 7064 the Lawyers Title

Insurance Corporation, a Virginia corporation, will be subject to and liable for the gross premium tax on all insurance or risks written in Texas under its certificate of authority "except premiums received from other licensed companies for reinsurance," which, of course, would be applicable to all premiums for reinsurance received from the proposed Texas corporation.

In answer to your first question there would not be any tax due the State of Texas by the Lawyers Title Insurance Corporation, a Virginia corporation, upon premiums received for reinsurance of policies originally issued by the proposed Texas corporation.

Since the provisions of Art. 7064, supra, which provide for the report to the Board of Insurance Commissioners, in connection with filing its annual statement, of the gross amount of premiums received upon property or risks located in this State, as the term gross premium is defined in the article, the premiums received for reinsurance by the Virginia corporation from the Texas corporation would not be reported upon the Virginia corporation's annual statement; and hence the answer to your second question is "no."

Your request states that the Texas corporation will be organized with Texas citizens as original incorporators and subscribers to the capital stock, but that ultimately all of the common stock of the proposed corporation, with the exception of several qualifying shares, may be acquired by the Lawyers Title Insurance Corporation, a Virginia corporation. Under the rule of law announced in the case of State v. Swift & Company, 187 S.W. (2) 127, 132-133 (err. ref.), such ultimate stock ownership in the Texas corporation by the Virginia corporation is not forbidden by either the laws or the public policy of the State of Texas and is not per se unlawful, unless the result of such ownership is to create a trust or restraint of trade or would be in furtherance of an attempt to evade the laws of the State of Texas. No such intention being apparent from your request, it is presumed that the ultimate acquisition of the stock in the Texas corporation by the Virginia corporation is for a lawful purpose, and therefore further discussion is here pretermitted.

## SUMMARY

Under the provisions of Art. 7064, R.C.S., as amended, where the gross premium tax due for insurance written on property or risks located in the State of Texas is payable by a domestic title insurance corporation and such risks are reinsured by a foreign title insurance company authorized to do

business in Texas, no tax is due thereon by the re-insuring foreign title insurance company. The premiums for reinsurance received by the foreign title insurance company from the domestic title insurance company for reinsuring the original risk do not constitute a part of the taxable gross premiums to be reported by the foreign title insurance company.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

C. K Richards
Assistant

CKR/JCP

APPROVED

FIRST ASSISTANT
ATTORNEY GENERAL